Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as
 STIPULATIONS
1. On the date of plaintiffs alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. State Auto Insurance Company is the workers compensation insurance carrier on the risk.
4. Plaintiffs average weekly wage was $421.54.
5. A set of exhibits attached to the parties Pre-Trial Agreement, including Industrial Commission forms, plaintiffs recorded statement, plaintiffs application for employment/pre-employment questionnaire, plaintiffs payroll records, a 12 October 1999 letter terminating plaintiffs employment and plaintiffs medical records, is admitted into evidence.
 EVIDENTIARY RULINGS
1. The objections appearing in the depositions of Drs. McCloskey, Lafavore and Winfield are OVERRULED, except for the objections appearing on page 11 of Ms. Garrens deposition which are SUSTAINED.
2. Plaintiffs medical records from Happy Valley Medical Center numbering 15 pages are admitted into evidence.
3. The records of the North Carolina Employment Security Commission produced pursuant to the Order filed 20 June 2000 are admitted into evidence.
4. Plaintiffs Answers to Defendants Interrogatories received from plaintiffs counsel on 15 February 2000 are admitted into evidence.
5. Medical records of Dr. Scott McCloskey, including notes, test results, work restriction notes and billing, and numbering 30 pages, have been received from plaintiffs counsel and are admitted into evidence.
6. Records of plaintiffs attendance and treatment at Unifour Pain Treatment Center and numbering 10 pages, have been received from plaintiffs counsel and are admitted into evidence.
7. A record of plaintiffs income earned from Northwest Associates Architecture from 12 May 2000 through 30 March 2001, and plaintiffs tax returns from 2000 have been received from plaintiffs counsel and are admitted into evidence.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 48 years old. His intellectual functioning, overall, is in the average range. His reading skills are in the high average range. His math and writing skills are in the average range.
2. Plaintiff graduated from high school in 1969. He enlisted in the United States Army, and served from 1969 through 1971. He later attended college for three years where he studied Engineering Technology, graduating in 1983. Plaintiff next attended college in California for two years, graduating in 1985 with a certification in computer-assisted design and drafting (CADD). Plaintiffs employment history included employment in supervisory or managerial positions for several employers. He has also worked as an "instrument man for land surveying companies.
3. Prior to his employment for defendant-employer, plaintiff worked for Sealed Air Corporation. Plaintiff ceased his employment with this employer due to his alleged contraction of a stress related disorder caused by that employment. In his application for employment with defendant-employer, plaintiff denied ever having a stress related disorder. He also omitted the fact that he left his employment with Sealed Air Corporation due to a stress related disorder. Instead, plaintiff stated that he left that employment because he "needed a change. In addition, plaintiff misrepresented the duration of his employment with M.A. Engineering, the land surveying business for which he worked immediately prior to his employment with defendant. These misrepresentations were intentional.
4. On 19 July 1999, defendant-employer hired plaintiff to work as a member of a survey crew. On Wednesday, 4 August 1999, plaintiff was assigned to a survey crew that was performing a survey of land owned by the YMCA. The property was hilly and thickly vegetated. Plaintiff testified that his feet became tangled in some vines or undergrowth which caused him to fall. Plaintiff testified that when this incident occurred, he yelled out, and one of his co-workers responded on a hand held radio and inquired whether plaintiff was "okay or "all right. In their testimony, plaintiffs co-workers denied hearing plaintiff yell out or inquiring via the radio whether plaintiff was "all right or "okay.
5. No one witnessed the incident described by plaintiff. Plaintiff did not report the alleged incident to his co-workers. Plaintiff completed his scheduled work shift on 4 August 1999. Plaintiffs co-workers did not observe plaintiff experiencing any physical difficulties after this incident.
6. Plaintiff worked as scheduled performing his usual duties on Thursday, 5 August 1999. He testified that he began experiencing stiffness in his back on that date. Plaintiff did not report to his co-workers or defendant-employer that he had fallen the previous day or that he was experiencing back stiffness. Plaintiff returned to work for defendant-employer on 6 August 1999. Plaintiff testified that his back was extremely stiff on that date, requiring him to sit during work. Plaintiff did not report to his co-workers or defendant-employer that he had fallen on Wednesday or that he was experiencing back stiffness requiring him to sit during work.
7. Plaintiff left work early on 6 August 1999, advising his supervisor that he needed to pick up some papers from his former employer. Plaintiff did not report the alleged incident of 4 August 1999 and he did not report that he was leaving work due to any physical condition interfering with his ability to perform his usual duties.
8. Plaintiff first reported this alleged incident to defendant-employer by telephone on Monday, 9 August 1999. At defendant-employers direction, plaintiff presented to Dr. Abernathy. Plaintiff reported to Dr. Abernathy that he had "stepped in a hole while working the previous week. He did not state that he had fallen. After examining plaintiff, Dr. Abernathy referred plaintiff to Dr. Winfield.
9. Plaintiff reported to Dr. Winfield that he "twisted when he stepped on a stump. Dr. Winfield prescribed medications and excused plaintiff from work. Thereafter, Dr. Winfield treated plaintiff conservatively. Ultimately, Dr. Winfield ordered an MRI. The MRI revealed lumbar stenosis, due primarily to a bulging disc at L4-L5. Plaintiff did not have a ruptured or herniated disc. After reviewing the MRI, Dr. Winfield prescribed epidural blocks.
10. On 24 August 1999, plaintiff gave a recorded statement to defendant-insurer. Defendant-insurer asked plaintiff whether he had any workers compensation injuries other than an injury of his upper back in 1984. Plaintiff denied having any other workers compensation injury despite the fact that he had a claim for workers compensation pending against his former employer, Sealed Air Corporation.
11. Beginning on 10 November 1999, plaintiff was under the care of Drs. McCloskey and Lafavore. Plaintiff informed Dr. McCloskey he "stepped in a hole. He informed Dr. Lafavore that he had fallen when he tripped in some bushes.
12. Dr. McCloskey concurred with the conservative treatment prescribed by Dr. Winfield and ordered an eight week course of epidural blocks. During the period of Dr. McCloskeys treatment, plaintiff had no muscle weakness or wasting. His reflexes and sense of sensation were normal.
13. While under Dr. McCloskeys care, plaintiff was not capable of working for a survey crew or performing other physically demanding work that required walking on uneven terrain in the mountains. Based upon plaintiffs physical condition, Dr. McCloskey restricted plaintiff from lifting greater than thirty pounds and "prolonged degrees of bending, pushing or pulling. Dr. McCloskey did not restrict plaintiff from all work. Dr. McCloskey would have permitted plaintiff to return to work in a position that was not physically demanding.
14. As of the date of the hearing, plaintiff had not worked for any employer since 6 August 1999. Likewise, plaintiff had not sought employment from any employer since 6 August 1999. Rather than seeking alternative employment, plaintiff sought the assistance of the North Carolina Division of Vocational Rehabilitation to return to school.
15. As of the date of the hearing, plaintiff had returned to school. He was a full-time student, attending classes at a community college four days per week, four to five hours per day. According to his testimony, plaintiff was capable of returning to work as of the date of the hearing.
16. From 7 December 1999 through 24 April 2000, plaintiff received unemployment benefits totaling $3,690.00.
17. After plaintiff came under the care of Dr. McCloskey, he was not restricted from all work. He was capable of performing work that did not require lifting weights in excess of thirty pounds or prolonged bending, pushing or pulling. Considering plaintiffs age, education, intelligence, work experience and physical limitations, if plaintiff had sought alternative employment, his efforts would not have been futile and his failure to seek alternative employment after coming under the care of Dr. McCloskey and after being terminated by defendant-employer was unreasonable.
18. Considering plaintiffs misrepresentations, his inconsistent descriptions of the alleged incident, the Deputy Commissioners assessment of his demeanor during the hearing and testimony and the demeanor of the other witnesses, the Full Commission does not accept as credible plaintiffs testimony regarding the alleged incident on 4 August 1999.
19. As of 10 November 1999, the date that plaintiff came under the care of Dr. McCloskey, plaintiff regained the capacity to return to work in a position that did not require lifting in excess of thirty pounds or prolonged bending, pushing or pulling.
 ***********
Based upon the stipulations and the foregoing findings of fact. the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment on 4 August 1999. N.C. Gen. Stat. 97-2(6).
2. Plaintiff is not entitled to compensation under the North Carolina Workers Compensation Act.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiffs claim must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs.
This the ___ day of May, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER